UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
THOMAS SHINE,                       :
                                    :
                  Plaintiff,        :    04 Civ. 8828 (MBM)
                                    :
       -against-                    :    OPINION & ORDER
                                    :
DAVID M. CHILDS and SKIDMORE        :
OWINGS & MERRILL, LLP,              :
                                    :
                  Defendants.       :
----------------------------------X

APPEARANCES:

ANDREW BAUM, ESQ.
PAUL FIELDS, ESQ.
ATUL R. SINGH, ESQ.
MICHAEL J. SULLIVAN, ESQ.
(Attorneys for Plaintiff)
Darby & Darby P.C.
805 Third Avenue
New York, New York 10022
(212) 527-7700

RICHARD A. WILLIAMSON, ESQ.
(Attorney for Defendants)
Flemming, Zulack & Williamson, LLP
One Liberty Plaza
New York, New York 10006
(212) 412-9500

MARCIA B. PAUL, ESQ.
(Attorney for Defendants)
Davis Wright Tremaine LLP
1633 Broadway, 27th Floor
New York, New York 10019
(212) 489-8230

MICHAEL B. MUKASEY, U.S.D.J.

Plaintiff Thomas Shine sues David M. Childs and
Skidmore, Owings & Merrill, LLP (SOM) for copyright infringement
under the United States Copyright Act, 17 U.S.C. § 101 - § 1332
(2000).  Shine alleges that he created designs for an original
skyscraper which Childs saw and later copied in the first design
plan for the Freedom Tower at the World Trade Center (WTC) site.
Defendants move to dismiss the Complaint, or alternatively for
summary judgment.  For the reasons explained below, defendants'
motion for summary judgment is granted in part and denied in
part.

I.

The facts viewed in the light most favorable to the
plaintiff, see Higgins v. Metro-North R.R. Co., 318 F.3d 422, 424
(2d Cir. 2003), are as follows.  In fall 1999, Shine was a
student in the Masters of Architecture Program at the Yale School
of Architecture.  As part of the required curriculum in his
program, he took a studio class on skyscrapers taught by renowned
architect Cesar Pelli.  (Compl. ¶ 8)  The object of this studio
was to create a design proposal for a monumental skyscraper that
would be built on West 32nd Street in Manhattan and used by the
media during the 2012 Olympic Games; the building was to be
adjacent to the proposed West Side stadium.  See id.; Shine Decl.
¶ 5.

During the first half of October 1999, Shine developed

a preliminary model for his design, which he refers to as "Shine
'99" for the purposes of this litigation.[1]  Plaintiff describes
Shine '99 as a tower that tapers as it rises, with "two straight,
parallel, roughly triangular sides, connected by two twisting
facades, resulting in a tower whose top [is] in the shape of a
parallelogram."  (Compl. ¶ 9)  See id. Ex. A, pp. 1-4
(photographs of Shine '99); see also App. One.

By the end of the fall 1999 semester, Shine had
developed a more sophisticated model of his design, entitled
"Olympic Tower."  Shine describes this structure as "a twisting
tower with a symmetrical diagonal column grid, expressed on the
exterior of the building, that follows the twisting surface
created by the floor plates' geometry."  (Id. ¶ 10)  According to
Shine, the column grid he designed gives rise to "an elongated
diamond pattern, supporting a textured curtain wall with diamonds
interlocking and protruding to create a crenelated appearance."
(Id.)  See id. Ex. B, pp. 1-9 (photographs of various models and
sketches of Olympic Tower and its design elements); see also App.
Two.

On or about December 9, 1999, Shine presented his
designs for Olympic Tower to a jury of experts invited by the
Yale School of Architecture to evaluate and critique its
students' work.  During a 30-minute presentation to the panel,

---

[1]  The Complaint states that plaintiff began designing Shine
'99 on or about "October 1, 1997."  However, because the rest of
the Complaint refers only to events occurring in 1999, this
reference to 1997 appears to be a typographical error.

Shine explained his tower's structural design, and displayed
different structural and design models (including Shine '99),
renderings, floor plans, elevations, sections, a site plan, and a
photomontage giving a visual impression of the tower's exterior.
(Shine Decl. ¶¶ 7-9)  Defendant Childs was on the panel, and he
praised Olympic Tower during the presentation, as did the other
luminaries[2] evaluating Shine's work.  When the review was
completed, Shine was applauded by the jury and other visitors,
which, according to Shine, is "highly unusual" at a student's
final review.  (Shine Decl. ¶ 10)  After the presentation, Childs
approached Shine, complimented Shine's color pencil rendering of
Olympic Tower, and invited Shine to visit after his graduation.
See Compl. ¶ 11; Shine Decl. ¶ 10.

Childs' favorable reaction to Olympic Tower was also
documented in Retrospecta, an annual alumni magazine[3] published
by the Yale School of Architecture featuring selected works by
the school's current students.  The 1999-2000 edition of
Retrospecta featured a large composite photographic rendering of
Olympic Tower set against an imaginary New York sunset, in
addition to smaller inset photographs of two of Shine's models of

---

[2]  In addition to Childs and Shine's professor Cesar Pelli,
the jury included Yale professor and urban planner Alexander
Garvin, architecture writer and critic Paul Goldberger, and
Robert A.M. Stern, dean of the Yale School of Architecture.
(Shine Decl. ¶ 6)

[3]  Because Childs is an alumnus of the Yale School of
Architecture, he presumably received a copy of this issue of
Retrospecta.  However in his Answer, Childs denies that he ever
saw a copy of the issue referenced by Shine in the Complaint.
(Durschinger Aff. Ex. D, ¶ 12)

the tower. Favorable comments from the panel members were printed next to the photographic rendering, including the following compliment from Childs: "It is a very beautiful shape. You took the skin and developed it around the form -- great!" (Compl. Ex. C) Shine does not allege that he had any contact with Childs after the December 1999 panel evaluation. However, he does claim that Childs' design for the Freedom Tower, unveiled four years later, infringed Shine '99 and Olympic Tower.

Childs did not begin work on the Freedom Tower until summer 2003. In order to choose the best possible design for the rebuilt WTC, the Lower Manhattan Development Corporation and the Port Authority of New York and New Jersey held an architectural competition in 2002 and 2003, in search of a master WTC site plan. In February 2003, Studio Daniel Libeskind's plan entitled "Memory Foundations" was selected as the winning design. See Suzanne Stephens, Imagining Ground Zero: Official and Unofficial Proposals for the World Trade Center Site 11, 28-29 (2004). In summer 2003, WTC developer Larry Silverstein asked Childs, who is a Consulting Design Partner at SOM, to begin working as design architect and project manager for the tallest building at the proposed new WTC site as conceptualized by Libeskind -- the building that later would be called the Freedom Tower. Id. at 29. Libeskind was to serve as collaborating architect during the initial concept and schematic design phases. Id. at 32. In spite of what was described as a "difficult marriage" between Childs and Libeskind, see id. at 29, a design for the Freedom

4

Tower was completed within six months, and was presented to the public at a press conference at Federal Hall in lower Manhattan on December 19, 2003. <u>See</u> <u>id.</u> at 32; Compl. ¶ 17; Durschinger Aff. ¶ 34. At this presentation, SOM and Childs displayed six large computer-generated images of the Freedom Tower, <u>see</u> Stephens at 34-35; two scale models of the Tower, <u>see</u> Durschinger Aff. Exs. N, O, and P; and a computer slide show detailing the Tower's design principles, <u>see</u> Durschinger Aff. Ex. Q. They also distributed a press packet containing six images of the proposed Tower, <u>see</u> <u>id.</u> Ex. R; <u>see also</u> App. Three.

As described by Shine, this version of the Freedom Tower "tapers as it rises and has two straight, parallel, roughly triangular facades on opposite sides, with two twisting facades joining them." (Compl. ¶ 18) Shine alleges that this design is substantially similar to the form and shape of Shine '99, and that it incorporates a structural grid identical to the grid in Olympic Tower, as well as a facade design that is "strikingly similar" to the one in Olympic Tower. (<u>Id.</u>) Apparently, others at the Yale School of Architecture noticed the similarity between the Freedom Tower and Shine's design: According to plaintiff's expert, Yale Professor James Axley, several days after Childs unveiled the design for the Freedom Tower, one of Shine's original models for Olympic Tower "was retrieved from archival storage and placed on the desk of the Dean of the School of Architecture." (Axley Decl. ¶ 7)

Shine registered Olympic Tower as an architectural work

with the U.S. Copyright Office on March 30, 2004 (Compl. Ex. E), and did the same for Shine '99 on June 24, 2004 (id. Ex. D). He filed the Complaint in this action on November 8, 2004, claiming that defendants copied his designs without his permission or authorization, and stating that defendants distributed and claimed credit for his designs "willfully and with conscious disregard" for his rights in his copyrighted works. (Id. ¶ 22)

Shine requests an injunction to prevent further infringement by defendants, as well as actual damages and defendants' profits realized by their infringement. (Id. ¶¶ 27-28) Defendants move to dismiss the Complaint, or alternatively for summary judgment, claiming that Shine's works are not original and not worthy of protection, and further arguing that there is no substantial similarity between either work and the Freedom Tower.

It should be noted that in June 2005, after law enforcement authorities, among others, objected to the Freedom Tower's original design,[4] Childs, SOM, and Libeskind unveiled a substantially redesigned version of the Tower. The alleged infringing design apparently has been scrapped and is unlikely to be constructed. The new version has, at least to this court's untrained eye, little similarity to either of Shine's copyrighted works, and the court assumes that Shine makes no claim that it infringes his works. Because the alleged infringing design may

---

[4] See Glenn Collins, A Freedom Tower Restarted From Scratch, The New York Times, July 10, 2005.

6

never be constructed, Shine's actual damages in this action may
be reduced, and he may be unable to show the need for an
injunction.  But because defendants' original design for the
Freedom Tower remains in the public domain, Shine's infringement
claim stands.

Defendants have moved under Fed. R. Civ. P. 12(b)(6) to
dismiss the Complaint, or alternatively, for summary judgment
under Fed. R. Civ. P. 56.  Because plaintiff has treated the
motion as one for summary judgment, <u>see</u> Pl. Br. at 11, and
because both parties have submitted materials outside the
Complaint that the court has found helpful, the court will
consider those materials, and apply summary judgment standards.
In assessing whether a genuine issue of material fact remains to
be tried, the court will view the facts in the light most
favorable to the nonmoving party.  <u>SCS Communications, Inc.</u> v.
<u>Herrick Co.</u>, 360 F.3d 329, 338 (2d Cir. 2004).

## II.

To prevail, plaintiff must prove "'(1) ownership of a
valid copyright, and (2) copying of constituent elements of the
work that are original.'"  <u>Williams</u>, 84 F.3d at 587 (quoting
<u>Feist Publ'ns., Inc.</u> v. <u>Rural Tel. Serv. Co.</u>, 499 U.S. 340, 361
(1991)).  To prove copying of original elements of his work, in
addition to showing originality, plaintiff must demonstrate both
that defendants actually copied his works, and that such copying
was illegal because there is substantial similarity between each

of his works and the alleged infringing work -- the Freedom Tower. <u>Knitwaves, Inc.</u> v. <u>Lollytogs Ltd.</u>, 71 F.3d 996, 1002 (2d Cir. 1995).

Defendants argue first that neither Shine '99 nor Olympic Tower qualifies as an architectural work under the Copyright Act. They argue also that both designs are unoriginal and functional, and therefore unworthy of whatever copyright protection they currently have. Finally, assuming that plaintiff's copyrights are valid, defendants deny that they copied plaintiff's designs, and assert that there is no substantial similarity between plaintiff's designs and the Freedom Tower. Plaintiff counters that Shine '99 and Olympic Tower are each original, copyrightable designs, that defendants actually copied each work, and that the Freedom Tower is substantially similar to each in different ways.

A. Architectural Works Under the Copyright Act

Prior to 1990, the United States did not allow structures to be copyrighted, except those few that did not serve any utilitarian purpose. <u>See</u> 1 Nimmer on Copyright § 2.20[A]. However, in 1989, the United States became a party to the Berne Convention for the Protection of Literary and Artistic Works, which required protection for "'three dimensional works relative to . . . architecture.'" <u>See</u> <u>id.</u> (quoting Berne Convention for the Protection of Literary and Artistic Works, revised at Paris, July 24, 1971, art. 2, 828 U.N.T.S. 221). Membership in the

Berne Convention required the United States to protect works of architecture; therefore, in 1990, Congress amended the Copyright Act, adding the Architectural Works Copyright Protection Act (AWCPA), which included architectural works as a new category of copyrightable material.

The AWCPA defines an architectural work as:

> the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features.

17 U.S.C. § 101. Defendants cite various portions of the legislative history of the AWCPA to argue that Shine's models are not architectural works meriting copyright protection. They claim that Shine's works are preliminary or conceptual, and do not meet the standard of a "design of a building." They argue also that plans for the "design of a building" may be protected only if a building actually could be constructed from the plans.

Defendants cite no cases to support their reading of the AWCPA. The statute nowhere states or implies that only designs capable of construction are worthy of protection. Although our Circuit has not specifically articulated the standard by which an architectural design is to be evaluated under the Copyright Act, when considering pictorial, graphic, and sculptural (PGS) works, also protected by the Act, see 17 U.S.C. § 101, it has twice noted that plans or designs not sufficiently detailed to allow for construction still may be protected. See Attia v. Soc'y of the N.Y. Hosp., 201 F.3d 50, 57 (2d Cir. 1999)

("[W]e do not mean to suggest that, in the domain of copyrighted architectural depictions, only final construction drawings can contain protected expression."); Sparaco v. Lawler, Matusky & Skelly Eng'rs LLP, 303 F.3d 460, 469 (2d Cir. 2002) ("We do not mean to imply that technical drawings cannot achieve protected status unless they are sufficiently complete and detailed to support actual construction.").  This reasoning should apply equally to architectural works, because our Circuit also has held that "'[i]n general, architectural works are subject to the same standards that apply to other copyrightable works.'"  Attia, 201 F.3d at 53 n.3 (quoting 1 Nimmer § 2.20[A]).  It is true that "generalized ideas and concepts pertaining to the placement of elements, traffic flow, and engineering strategies," or in other words, "ideas and concepts," are not worthy of protection.  Id. at 57.  However, once a design includes "specific expression and realization of . . . ideas," copying constitutes infringement. Sparaco, 303 F.3d at 469; cf. Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487. 489 (2d Cir. 1960) ("[N]o principle can be stated as to when an imitator has gone beyond copying the 'idea' and has borrowed its 'expression.'  Decisions must therefore inevitably be ad hoc.") (L. Hand, J.).

Both Shine '99 and Olympic Tower are worthy of protection under the AWCPA.  Shine '99 is a scale model of a twisting tower: Two of the tower's sides are smooth and taper straight toward the top creating a roughly triangular shape; the other two sides twist and taper as they rise, and one of those

sides features four graded setbacks or levels that narrow as the
tower rises.  The top of the tower forms a parallelogram.  See
Compl. Ex. A, pp. 1-4; Shine Decl. ¶ 18.  Shine '99, although
certainly a rough model, is more than a concept or an idea; it is
a distinctive design for a building.  As explained above, whether
a tower actually could be constructed from this model is
irrelevant.  Defendants argue that the shape and form of Shine
'99 are so rudimentary and standard that protecting it would be
akin to protecting a particular geometric shape, such as "an
ellipse, a pyramid, or an egg."  (Def. Br. at 28)  However, the
AWCPA protects "the design of a building as embodied in any
tangible medium of expression . . . [including] the overall form
as well as the arrangement and composition of spaces and elements
in the design . . . ."  17 U.S.C. § 101.  Individual arguably
"standard" elements of Shine '99, such as its twist or its
setbacks, might not be worthy of protection, but the arrangement
and composition of the various elements in the model do at least
arguably constitute the "design of a building" under the AWCPA.

　　　　The same is true for Olympic Tower, which is a much
more intricate and detailed design than Shine '99.  The
copyrighted Olympic Tower materials include two models of the
tower, one of the building's internal supports and one of its
external appearance.  Both models show that the building twists
on all four sides; comparing the models reveals that the internal
diamond-shaped grid supporting the tower is reflected and
repeated in the external "skin" on its facade –– a design that

11

Childs commented on during his evaluation of Shine's work.  See
Compl. Ex. B, pp. 2-6; Ex. C.  Shine also copyrighted elevation
sketches of the tower to display the building's core at different
levels, see id. Ex. B, pp. 7-8, a photomontage of what the
building might look like against the New York sky, see id. Ex. B.
p. 1, as well as what appears to be a sketch of the undulating
triangular grid design for the exterior, of the building, see id.
Ex. B, p. 9.  The detailed and specific materials Shine
copyrighted for Olympic Tower certainly constitute the "design of
a building," and qualify it as an architectural work under the
AWCPA.

## B.  Originality

Defendants next claim that neither Shine '99 nor
Olympic Tower is sufficiently original to warrant protection
under the AWCPA.  Using the House Committee Report on the AWCPA
as their guide, defendants argue for a two-step analysis of the
originality and functionality of an architectural work: First,
the House Report noted, the work in question should be examined
for the presence of original design elements.  If such elements
exist and are not functionally required, the Report concluded,
then the work is protectable.  (Def. Br. at 31)  Following this
framework, defendants argue that no single part of Shine's work
is original; that any parts that might be original are
functionally required to support its design and therefore
unprotectable; and that the arrangement of the various design

elements featured in Shine's work is a compilation not meriting protection under existing law.

In this analysis, defendants fly high and fast over the large body of Supreme Court and Second Circuit case law on originality and copyright infringement, as well as the text of the AWCPA, which states that "the overall form as well as the arrangement and composition of spaces and elements in the design" of an architectural work may be the subject of a valid copyright. 17 U.S.C. § 101. First, defendants fail to acknowledge that plaintiff's "certificates of [copyright] registration constitute prima facie evidence of the validity not only of their copyrights, but also of the originality of [the] works." Boisson v. Banian, Ltd., 273 F.3d 262, 268 (2d Cir. 2001); see also 17 U.S.C. § 410(c) (a copyright registration certificate, when issued within five years of the first publication of the work, is prima facie evidence of ownership of a valid copyright). It is also true, however, that originality is "the sine qua non of copyright," Feist, 499 U.S. at 345, and if a work is not original, then it is not protectable. If a certain element within a work is not original, that element is not protectable "even if other elements, or the work as a whole, warrant protection." Boisson, 273 F.3d at 268.

Plaintiff need not clear a high bar in order for his architectural works to qualify as original:

> In the copyright context, originality means the work
> was independently created by its author, and not copied
> from someone else's work. The level of originality and
> creativity that must be shown is minimal, only an

13

'unmistakable dash of originality need be demonstrated, high standards of uniqueness in creativity are dispensed with.'

Folio Impressions, Inc. v. Byer California, 937 F.2d 759, 764-65 (2d Cir. 1991) (quoting Weissmann v. Freeman, 868 F.2d 1313, 1321 (2d Cir. 1989)); see also Gaste v. Kaiserman, 863 F.2d 1061, 1066 (2d Cir. 1988) (describing the requirement of originality as "little more than a prohibition of actual copying") (internal quotation marks omitted).  Additionally, our Circuit has held that "a work may be copyrightable even though it is entirely a compilation of unprotectible elements."  Knitwaves, 71 F.3d at 1003-04.

If the court followed defendants' suggestion and analyzed the elements of plaintiff's works separately, comparing only those elements that are copyrightable to those present in the designs for the Freedom Tower, as our Circuit noted, "we might have to decide that there can be no originality in a painting because all colors of paint have been used somewhere in the past."  Id. at 1003 (internal quotation marks omitted); see also, e.g., Covington Indus., Inc. v. Nichols, No. 02 Civ. 8037, 2004 U.S. Dist. LEXIS 6210, at *8-*11 (S.D.N.Y. Apr. 12, 2004) (holding that although neither vertical nor horizontal stripes, nor individual colors, nor the practice of basket weaving was original, the total concept of plaintiff's design for a colored, striped basket was original); Sunham Home Fashions, LLC v. Pem-America, Inc., No. 02 Civ. 6284, 2002 U.S. Dist. LEXIS 24185, *18-*19 (S.D.N.Y. Dec. 17, 2002) ("Although the idea of a plaid

14

or floral pattern may not of its own be original, the patterns'
sizes, shapes, arrangements and colors taken together are
original and copyrightable.").

Following this analysis, both Shine '99 and Olympic
Tower at least arguably are protectable and original.  It is true
that, as defendants' expert points out, twisting towers have been
built before.  Towers with diamond-windowed facades have been
built before.  Towers with support grids similar to the one in
Olympic Tower have been built before.  Towers with setbacks have
been built before.  But defendants do not present any evidence
that the particular combinations of design elements in either
Shine '99 or Olympic Tower are unoriginal.[5]  These works each
have at least the mere "dash of originality" required for
copyrightability, not to mention that they both have been
copyrighted, and therefore are prima facie original.

Defendants argue also that any original aspect of
Olympic Tower's facade is functionally required by the support
grid utilized by Shine, and therefore unprotectable.  See Meier
Aff. ¶¶ 19-22, 39-40; Def. Br. at 33.  However, Shine's expert
disputes this contention.  See Axley Decl. ¶ 10.  Therefore, even
if certain of the original design elements of Olympic Tower are
dictated by functionality and therefore not copyrightable -- a
proposition for which there is no apparent support in the case

_____

[5]  None of the designs defendants indicate as evidence of
the unoriginality of Shine's works bear any significant
resemblance to either Shine '99 or Olympic Tower.  See Meier Aff.
Exs. E.2, E.5, J, L.

law or the AWCPA -- a material issue of fact on this matter remains for trial.

C.  Infringement

To prove infringement,

[a] plaintiff must first show that his or her work was actually copied.  Copying may be established either by direct evidence of copying, or by indirect evidence, including access to the copyrighted work, similarities that are probative of copying between the works, and expert testimony.  If actual copying is established, a plaintiff must then show that the copying amounts to an improper appropriation by demonstrating that substantial similarity to protected material exists between the two works.

Laureyssens v. Idea Group, Inc., 964 F.2d 131, 140 (2d Cir. 1992); see also Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 131 (2d Cir. 2003).

1.  Actual Copying

As explained above, unless the rare situation exists where plaintiff has direct proof that defendants copied his work, plaintiff may prove actual copying by showing that defendants had access to his copyrighted works, and that similarities that suggest copying exist between the protected works and the alleged infringing work.  Cf. Castle Rock Entm't v. Carol Publ'g Group, 150 F.3d 132, 137 (2d Cir. 1998) ("'[P]robative,' rather than 'substantial' similarity is the correct term in referring to the plaintiff's initial burden of proving actual copying by indirect evidence.  It is only after actual copying is established that one claiming infringement then proceeds to demonstrate that the

16

copying was improper or unlawful by showing that the second work bears 'substantial similarity' to protected expression in the earlier work.") (internal citations omitted); <u>see also</u> 4 Nimmer § 13.03[B].[6]

For the purposes of this motion, defendants concede that Childs had access to both Shine '99 and Olympic Tower when he evaluated them as part of the expert jury at the Yale School of Architecture in December 1999. (Def. Br. at 38) Therefore, all that plaintiff must prove to show actual copying in this action is probative similarity between his works and the Freedom Tower. The court may consider expert testimony when assessing probative similarity, <u>see Laureyssens</u>, 964 F.2d 140. Given the substantial disagreement between plaintiff's expert Axley and defendants' expert Meier on the alleged similarity between Olympic Tower and the Freedom Tower, <u>compare</u> Axley Decl. ¶¶ 21-24 <u>with</u> Meier Aff. ¶¶ 32-41, and that these experts' views are, at least to the court's untrained eye, plausible, there is at least an issue of material fact remaining for trial as to the probative similarity between those two works.

However, plaintiff's expert Axley does not comment on whether any similarity exists between Shine '99 and the Freedom

---

[6] The phrase "probative similarity" is used to distinguish this stage of infringement analysis from "substantial similarity," which is examined only after actual copying is shown. The idea of probative similarity was first suggested in a law review article, and later adopted by our Circuit. <u>See</u> Alan Latman, 'Probative Similarity' as Proof of Copying: Toward Dispelling Some Myths in Copyright Infringement, 90 <u>Colum. L. Rev.</u> 1187 (1990); <u>Laureyssens</u>, 964 F.2d at 140.

Tower.  According to plaintiff, "the shape of Freedom Tower is remarkably similar to the shape of Shine '99" because both towers have two straight parallel walls and two twisting walls.  (Shine Decl. ¶ 18)  Shine claims that the four setbacks on one side of Shine '99 were "intended as an alternative approach to the form of the twisting sides."  (Id.)  Whether they were so intended or not, these setbacks are a distinctive feature of the model which bear no resemblance to any feature of the Freedom Tower.  Even imagining Shine '99 with four smooth sides, there are still no similarities between Shine '99 and the Freedom Tower that are probative of actual copying.  Both towers twist as they rise, but as defendants' expert points out with ample evidence, see Meier Aff. Exs. D, G, the idea of a twisting tower with a rectangular base and parallel sides is by no means unique.  There is no evidence to suggest that Childs would have thought of the idea of a twisting tower only by viewing Shine '99.  Plaintiff's own expert could not find similarities between Shine '99 and the Freedom Tower substantial enough to warrant comment.  Other than that Childs had access to the design, there is no evidence to suggest that defendants actually copied the form or shape of Shine '99.  Therefore, no material issue of fact regarding the probative similarity of Shine '99 and the Freedom Tower remains for trial, and defendant's motion for summary judgment as to Shine '99 is granted.

    2.  Substantial Similarity

Because there is at least an issue of material fact as to whether defendants actually copied Shine's design for Olympic Tower, the court now must determine whether reasonable jurors could find that substantial similarity exists between Olympic Tower and the Freedom Tower. Our Circuit has not yet had occasion to compare the substantial similarity of a copyrighted architectural work such as Olympic Tower to an alleged infringing work, so it is not entirely clear which standard the court should use for the comparison.[7]

However, "total concept and feel" is the dominant standard used to evaluate substantial similarity between artistic works in our Circuit, and that standard is the most appropriate one in this case. See id. (noting that "[i]n recent years we have found it productive to assess claims of inexact-copy infringement by comparing the contested design's 'total concept and overall feel' with that of the allegedly infringed work," and applying this test to compare two carpet designs); Boisson, 273 F.3d at 272 (using the "total concept and feel" test to compare to quilt designs and noting that substantial similarity has "always" been guided by this test); Knitwaves, 71 F.3d at 1003 (applying the "total concept and feel" test to compare two different designs on sweaters); Laureyssens, 964 F.2d at 141

_____

[7]  In two recent cases where it analyzed the resemblance between copyrighted PGS works and structures, the Court generally discussed the similarities between the copyrighted materials and the alleged infringing works, but did not utilize a specific procedure for these comparisons. See Sparaco, 303 F.3d at 467-70; Attia, 201 F.3d at 56-58.

(using overall aesthetic appeal test to compare two foam rubber puzzles); see also Sturdza, 281 F.3d at 1296 (comparing two architectural works and holding that "[t]he substantial similarity determination requires comparison not only of the two works' individual elements in isolation, but also of their 'overall look and feel.'" (quoting Boisson, 273 F.3d at 266)).

Defendants argue that court should apply the test set forth in Computer Assocs. Int'l., Inc. v. Altai, 982 F.2d 693 (2d Cir. 1992) to compare the two complex architectural works here. In Altai, the court was asked to determine whether one computer program infringed another, and in doing so, it devised a new test for determining substantial similarity in that context. The Court described its test as follows:

> In ascertaining substantial similarity under this approach, a court would first break down the allegedly infringed program into its constituent structural parts. Then, by examining each of these parts for such things as incorporated ideas, expression that is necessarily incidental to those ideas, and elements that are taken from the public domain, a court would be able to sift out all non-protectable material. Left with a kernel, or possibly kernels, of creative expression after following this process of elimination, the court's last step would be to compare this material with the structure of an allegedly infringing program. The result of this comparison will determine whether the protectable elements of the programs at issue are substantially similar so as to warrant a finding of infringement.

Id. at 706. However, as noted above in the discussion of originality, the AWCPA protects the "overall form as well as the arrangement and composition of spaces and elements in the design" of architectural works. 17 U.S.C. § 101. If the court were to follow the Altai analysis and separate out only those "kernels"

20

of expression that would qualify as original, that, as our Circuit has held, "would result in almost nothing being copyrightable because original works broken down into their composite parts would usually be little more than basic unprotectible elements like letters, colors, and symbols." Boisson, 273 F.3d at 272.

Our Circuit noted recently that some commentators have worried that "'the total concept and feel' standard may 'invite an abdication of analysis,' because 'feel' can seem 'a wholly amorphous referent.'" Tufenkian, 338 F.3d at 134 (quoting 4 Nimmer § 13.03[A][1][c]). But the Court added that the total concept and feel test was not "so incautious," because where it has been applied, courts have taken care to identify "precisely the particular aesthetic decisions —— original to the plaintiff and copied by the defendant —— that might be thought to make the designs similar in the aggregate." Id. The Court explained further that

> while the infringement analysis must begin by dissecting the copyrighted work into its component parts in order to clarify precisely what is not original, infringement analysis is not simply a matter of ascertaining similarity between components viewed in isolation. For the defendant may infringe on the plaintiff's work not only through literal copying of a portion of it, but also by parroting properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art —— the excerpting, modifying, and arranging of public domain compositions, if any, together with the development and representation of wholly new motifs and the use of texture and color, etc. —— are considered in relation to one another. The court, confronted with an allegedly infringing work, must analyze the two works closely to figure out in what respects, if any, they are similar, and then determine whether these

> similarities are due to protected aesthetic expressions
> original to the allegedly infringed work, or whether
> the similarity is to something in the original that is
> free for the taking.

Id. at 134-35. Although this analysis was applied to carpet

designs, it also is appropriate for architectural works, because

the AWCPA protects the "overall form" of architectural designs in

addition to their individual copyrightable elements.

The court has already found that, even though several

of its component parts may not be original, the composite design

of Olympic Tower is at least arguably unique and original.  See

supra Part III.B.  Now the court must determine whether,

examining the "total concept and feel" of both works, there is an

issue of material fact as to whether the design of the Freedom

Tower infringes on any of the original aesthetic expressions of

the Olympic Tower.

This task presents the question of the point of view

from which the "concept and feel" substantial similarity analysis

should be conducted.  Defendants argue that the analysis should

be conducted with the aid of expert testimony, but they cite no

Second Circuit authority for this proposition.[8]  It seems odd

---

[8]  Defendants note that the Altai Court granted discretion
to district courts to allow expert testimony in evaluating the
substantial similarity of computer programs.  However, they cite
no case where a court has actually utilized such testimony,
either to examine computer programs or any other copyrighted
material.  See Def. Br. at 44 (citing Altai, 982 F.2d at 713).
Indeed, the Altai Court noted that its decision to allow expert
testimony on the substantial similarity of computer programs was
not intended "to disturb the traditional role of lay observers in
judging substantial similarity in copyright cases that involve
the aesthetic arts, such as music, visual works or literature."
Altai, 982 F.2d at 713-14.

22

that defendants would advocate such a test, because there is significant disagreement between the respective parties' two highly qualified experts regarding the substantial similarity of Olympic Tower and the Freedom Tower. According to the experts, many issues of material fact remain in dispute as to total concept and feel. If the court were to adopt defendants' suggestion and consider expert testimony in its analysis of substantial similarity, it would have no choice but to deny summary judgment on the issue.

However, the Second Circuit has long held that substantial similarity should be determined not with the help of or solely by experts in the relevant field, but from the perspective of the ordinary observer:

> The plaintiff's legally protected interest is not, as such, his reputation . . . but his interest in the potential financial returns from his [work] which derive from the lay public's approbation of his efforts. The question, therefore, is whether defendant took from plaintiff's works so much of what is pleasing to the . . . lay [public] . . . that defendant wrongfully appropriated something which belongs to the plaintiff.

Arnstein v. Porter, 154 F.2d 464, 473 (2d Cir. 1946) (footnotes omitted). Because the lay public's approbation usually is the foundation of returns that derive from a copyrighted work, an allegedly infringing work is considered substantially similar to a copyrighted work if "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." Folio Impressions, 937 F.2d at 765.

Our Circuit refined the ordinary observer test in cases where certain aspects of the copyrighted work are taken directly from the public domain, and applied a "more discerning" ordinary observer test. "What must be shown is substantial similarity between those elements, and only those elements, that provide copyrightability to the allegedly infringed compilation." Key Publ'ns, Inc. v. Chinatown Today Publ'g Enters., Inc., 945 F.2d 509, 514 (2d Cir. 1991). However, this "more discerning" ordinary observer test must be applied in conjunction with the "total concept and feel" test, so as not to deny protection to works that have combined unoriginal elements in a unique and copyrightable fashion, as is at least arguably true here. Boisson, 273 F.3d at 272-73; see also Williams, 84 F.3d at 590 ("[A] scattershot approach cannot support a finding of substantial similarity because it fails to address the underlying issue: whether a lay observer would consider the works as a whole substantially similar to one another."). Noting the difficulty of applying the "more discerning ordinary observer" test to the "total concept and feel" evaluation, the Boisson Court counseled that with all of the above concepts in mind, the court's substantial similarity analysis ultimately should be guided by "common sense." 273 F.3d at 273.

With these principles in mind, the court finds that reasonable ordinary observers could disagree on whether substantial similarity exists between the Freedom Tower and Olympic Tower. Defendants present several photographic

comparisons between the two structures in their Reply Memorandum.
See Def. Reply Br. at 12, 18, 21, and 24. Although defendants
offer these comparisons to point out what they claim are
significant differences between the two towers, "[i]t has long
been settled that 'no plagiarist can excuse the wrong by showing
how much of his work he did not pirate.'" Tufenkian, 338 F.3d at
132 (quoting Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49,
56 (2d Cir. 1936) (L. Hand, J.)). Any lay observer examining the
two towers side by side would notice that: (1) each tower has a
form that tapers and twists as it rises, (2) each tower has an
undulating, textured diamond shaped pattern covering its facade,
and (3) the facade's diamond pattern continues to and concludes
at the foot of each tower, where one or more half diamond shapes
open up and allow for entry. These combination of these elements
gives the two towers a similar "total concept and feel" that is
immediately apparent even to an untrained judicial eye.

It is possible, even likely, that some ordinary
observers might not find the two towers to be substantially
similar because, as defendants note, there are differences
between the Freedom Tower and Olympic Tower, including, inter
alia, the number of sides of each tower that twist (the Freedom
Tower's two versus Olympic Tower's four); the direction of each
tower's twist (the Freedom Tower twists clockwise and Olympic
Tower twists counterclockwise); the shape of each tower's ground
floor (the Freedom Tower is a parallelogram and Olympic Tower is
a square); and the various contrasting details of each tower's

entrance and facade.  See Def. Reply Br. at 11-24; see also

Warner Bros., Inc. v. Am. Broad. Cos., 654 F.2d 204, 211 (2d Cir.

1981) ("[W]hile 'no plagiarist can excuse the wrong by showing

how much of his work he did not pirate,' a defendant may

legitimately avoid infringement by intentionally making

sufficient changes in a work which would otherwise be regarded as

substantially similar to that of the plaintiff's.") (quoting

Sheldon, 81 F.2d at 56).  However, it also is possible that a lay

observer, applying the total concept and feel test, might find

that the Freedom Tower's twisting shape and undulating diamond-

shaped facade make it substantially similar to Olympic Tower, and

therefore an improper appropriation of plaintiff's copyrighted

artistic expression.

Because reasonable jurors could disagree as to the

substantial similarity between Olympic Tower and the Freedom

Tower, defendants' motion for summary judgment as to plaintiff's

claims regarding Olympic Tower is denied.

*     *     *

For the foregoing reasons, defendants' motion for summary judgment regarding plaintiff's claim that the Freedom Tower infringed upon his copyrighted architectural work Shine '99 is granted. Defendants' motion for summary judgment regarding plaintiff's claim that the Freedom Tower infringed upon his copyrighted architectural work Olympic Tower is denied.

SO ORDERED:

Michael B. Mukasey
U.S. District Judge

Dated:   New York, New York
         August 4, 2005

Appendix One: Shine '99








Appendix Two: Olympic Tower





Appendix Two: Olympic Tower



Appendix Three: Freedom Tower




Appendix Three: Freedom Tower

